# In re BUCHANAN, Petitioner.

## ORIGINAL.

No. 12. Original. Argued April 16, 1895. — Decided April 17, 1895.

A question in relation to the physical and mental condition of a juror and his competency to return a verdict is a question of fact, and this court upon a writ of error to the highest court of a State in an action at law cannot review its judgment upon such a question.

THE case is stated in the opinion.

*Mr. J. J. Noah* and *Mr. Dennis A. Spellisey* for petitioner.

*Mr. John D. Lindsay* opposing. *Mr. John R. Fellows* was on the brief.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Petitioner was tried in the Court of General Sessions of the city and county of New York upon an indictment charging him with the murder of his wife, by poison, April 22, 1892. The trial was commenced March 20, 1893, and was concluded April 26 following by the rendition of a verdict of guilty. A motion for a new trial was denied, and petitioner was sentenced August 14, 1893, to the punishment of death upon a day within the week commencing October 2, 1893, and on the seventeenth of August he appealed to the Court of Appeals. The appeal was argued before that court January 21, 1895, and the judgment affirmed February 26, 1895. The execution of petitioner was again appointed for the week commencing April 22. Application is made for a writ of error to this court upon the ground that petitioner's trial, conviction, and sentence are in contravention of the Constitution of the United States in that " petitioner is sought to be deprived of life without due process of law," and in " that he was not tried by an impartial jury of the State and dis-

trict wherein the crime was committed." In the sixty-sixth specification of his motion for a new trial defendant alleged that "the verdict of the jury is not such a verdict as is contemplated by the Constitution of the United States or the constitution of the State of New York. The only verdict recognized thereunder is that of a jury of twelve men of sound mind and memory, which this verdict is not." This seems to have been the only claim of a Federal question made in the state courts, and falls far short of that specific assertion of a right, privilege, or immunity under the Constitution, at the proper time and in the proper way, upon the denial of which this court is entitled to reëxamine the judgment of a state court on writ of error.

Assuming it as sufficient, however, the contention of petitioner is thus set forth in his petition:

"Your petitioner further alleges in support of his averments that, upon the trial of said case, one Paradise, one of the petit jurors empanelled therein, became mentally incapacitated, and was not in condition, mental and physical, to be consulted and was not consulted by his fellow-jurors while deliberating thereon; that by reason of his said mental and physical incapacity he was absent from the jury room for nearly three hours, separate and apart therefrom, and in company with a physician and another person then and there attending him; that others of the jury were allowed to separate and communicate with outside parties pending deliberations upon the verdict; that when finally called into court for the purpose of delivering the verdict of said jury, Paradise's mental and physical incapacity had not ceased, and he was still mentally and physically incapacitated from participating in and rendering his assent to the verdict of said jury; and that therefore said verdict was not rendered by a competent and impartial jury, all of which petitioner avers will be shown by the record.

"And your petitioner further represents that, notwithstanding the evident mental and physical incapacity on the part of said juror, Paradise, the court refused to recognize the same and ordered that the said incapacitated juror be embraced with

his fellow-jurymen in considering and rendering their verdict, and thereby the jury was rendered partial and, in fact, the verdict emanated from only eleven jurors, of which the record duly attests, and whereof your petitioner is ready to submit record proof."

In respect of these matters the Court of Appeals, *People* v. *Buchanan*, 145 N. Y. 1, 29, said:

" After the jury had retired, an incident occurred, which has been made much of and which constituted the basis, in part, of a motion for a new trial. The jury retired in the afternoon of April 25th. In the evening of the day following, they were taken over to a hotel for their dinner. Paradise, one of their number, was taken suddenly ill and fainted. A physician was called in, who found him first unconscious and then delirious. He had him removed to another room, where he treated him professionally. A report of the occurrence was made to the recorder; who sent for and examined the attending physician, in the presence of the district attorney and of the defendant's counsel. He gave a description of what had taken place and of what he had done. He gave his opinion that the attack had been caused by the mental strain and he thought the juror might be able to come to the court after a while. Later in the evening, the juror, having improved, was brought over and took his seat, with his associates, in the jury box. It appeared that they had agreed upon a verdict before the illness; but the recorder thought it inadvisable, under the circumstances, to then receive their verdict; advising them to again retire and confer. They did so and shortly returned with their verdict. Upon the facts, as they were made to appear, there was nothing to warrant the trial judge in refusing to receive the verdict.

" Subsequently, however, upon the hearing of the motion for a new trial, certain other facts were made to appear, which we have considered carefully, with the view of ascertaining whether they furnish any sufficient reason for believing that the verdict of the jury was not properly or fairly reached. One branch of the motion was based on the ground that there had been an illegal separation of the jurors. Affidavits were

read, showing that upon the removal of the sick juror from
the room, in which he and his fellow-jurors were dining
together, the other jurors separated; some running to and
from the sick man's room and others going in other directions
and alone. In opposition were read the affidavits of the jurors
and of the court officers; to the effect that the jurors were
always in charge of the officers; that none of them were ever
alone and that no communication was had with them by any
person in reference to the case. Upon these proofs, it was
discretionary with the trial court to order a new trial, or not;
and with the exercise of its discretion we will not interfere.
Code Crim. Proc. sec. 465, subd. 3. It was a question of
fact and I think the judicial discretion of the learned recorder
was well exercised, in having regarded the involuntary separa-
tion of the jurors as working no possible prejudice to the
defendant. The second branch of the motion for a new trial
was based on the ground that the attack, which the juror,
Paradise, suffered from, was an expression of a generally
deranged judgment, and that his mind could not have been
clear and sound, or capable of judgment, for some hours before
and after. In support of that ground, the affidavits of several
distinguished physicians and alienists were produced and read.
It was their opinion, upon the statement of the physician, who
attended the said juror, of the juror's son and of others, detail-
ing what had occurred, that the attack was epileptic in char-
acter. They, in substance, thought it evidenced a confirmed
epileptic condition and indicated a mental disturbance, which
must have existed for several hours and must have rendered
his mental action unreliable and valueless. In opposition to
these opinions, were read affidavits by several other physicians,
expert in mental diseases, who had made a personal examina-
tion of the juror and who gave it as their opinion that there
was no perceptible indication of epilepsy, or of paresis, and
that he was in full possession of his faculties. Upon Paradise's
statements as to his past life, they were of the opinion that he
had never suffered from epilepsy or insanity. They thought
the symptoms of his attack were those of nervous exhaustion
and of hysteria, induced by the close confinement and the .

long-continued strain upon him in the performance of his duties of a juror. His own affidavit was read, denying ever having suffered from epileptic attacks. He narrated the occurrences in the jury room and stated that after the first ballot, when he had voted 'not guilty,' he had upon each subsequent ballot voted 'guilty,' and that the jury had agreed upon their verdict before they went to the hotel for their meal. He stated that he felt well when he came back to court and was able to deliberate. He gave the facts about his past life and he showed that the day after the conclusion of the trial he had gone away on business and remained away until June, being in the full possession of his health and faculties. The affidavits of physicians, who had known and attended him in the past, stated that he had never manifested any epileptic symptoms, or any form of nervous disease. Other affidavits, by his employer and by his fellow-jurors, were read to show his mental competency.

"The recorder, in denying a new trial, had before him the conflicting opinions of the experts, the facts stated in the affidavits and those within his own observation. It cannot be said that the defendant made out a case of mental incompetency in the juror. While the opinions of the physicians, secured by him, seemed to give support to his theory of a mental or nervous disease in the juror, which incapacitated him to deliberate or confer upon his case, they were not based upon any personal examination, but were premised upon the statements given them. In view of the evidence as to his physical and mental condition upon actual examination, as to the facts of his past life and of his condition for weeks after the trial, the learned recorder could not well have decided otherwise than he did and I think we must agree with him that the opinions of the experts for the people were warranted by the evidence and that those of the defendant's experts were not.

"The elaborate opinion, which he delivered upon the denial of the motion for a new trial, contains a conscientious and able review of the question and is perfectly satisfactory."

It will be seen from this statement, which sufficiently sum-

marizes the circumstances disclosed by the record, that the question in relation to the physical and mental condition of the juror and his competency to return a verdict was a question of fact, and this court upon a writ of error to the highest court of a State in an action at law cannot review its judgment upon such a question. *Dower* v. *Richards*, 151 U. S. 658, 664, and cases cited. We are unable, therefore, to discover any ground justifying the granting of the writ applied for. *Andrews* v. *Swartz*, 156 U. S. 272; *Lambert* v. *Barrett*, 157 U. S. 697; *In re Kemmler*, 136 U. S. 436; *Caldwell* v. *Texas*, 137 U. S. 692; *McNulty* v. *California*, 149 U. S. 645; *McKane* v. *Durston*, 153 U. S. 684, 687.

*Application denied.*