THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES LUCIANO, Alias LUCKY LUCIANO, Alias CHARLES LUCANIA, Alias LUCKY, Alias CHARLES LANE, Alias CHARLES REID, Alias CHARLES ROSS; THOMAS PENNOCHIO, Alias TOMMY BULL, Alias THOMAS NELSON, Alias THOMAS SULLIVAN; DAVID BETILLO, Alias DAVID PETILLO, Alias ROBERT QUELLO, Alias DAVID ROSSA, Alias LITTLE DAVIE; JAMES FREDERICO, Alias JIMMY FREDERICKS, Alias GOLDBERG; ABRAHAM WAHRMAN, Alias ABE HELLER, Alias ABIE; and RALPH LIGUORI, Defendants.*

Supreme Court, New York County, May 7, 1937.

* Affd., 251 App. Div. 887; appeal dismissed, 275 N. Y. 547.

*Thomas E. Dewey* [*Stanley H. Fuld* with him on the brief and *William Copeland Dodge, District Attorney*], for the plaintiff.

*Moses Polakoff* and *Samuel Mezansky*, for the defendant Charles Luciano.

*Lorenzo C. Carlino*, for the defendant Ralph Liguori.

McCook, J.   Charles Luciano was convicted in June, 1936, upon sixty-two counts of an indictment charging him with violating subdivisions 2, 4 and 8 of section 2460 of the Penal Law, acting in concert with other men named in the same indictment.   Nine of these other men were sentenced at the same time.   Luciano and the rest were by the jury's verdict pronounced guilty of conducting and directing on a large scale the business of prostituting women, with features of wholesale oppression and corruption.   At the trial Luciano was proved to be the leader of the conspiracy and his counsel concedes that if he was guilty the sentence he is now serving was well deserved.

Luciano moves for a new trial under that portion of subdivision 7 of section 465 of the Code of Criminal Procedure relating to newly-discovered evidence, which gives the court power to grant a new trial " where it is made to appear, by affidavit, that upon another trial the defendant can produce evidence such as, if before received would probably have changed the verdict." His codefendants, Liguori, Betillo, Pennochio and Wahrman, likewise serving sentences for these offenses, have been permitted to join in the motion upon the same moving affidavits; they also move on separate grounds, apparently relying on subdivision 3 of the same section of the Code of Criminal Procedure, employing one affidavit made by Lorenzo C. Carlino.   An entire day was occupied in listening to arguments of counsel for the defendants Luciano and Liguori and for the People.   The voluminous affidavits have been thoroughly read and considered in the light of the arguments and the briefs.

Three of the People's trial witnesses, Flo Brown, Nancy Presser and Mildred Harris or Balitzer, have under oath recanted as to Luciano.   Helen Kelly, a former witness for the prosecution, swears the trial testimony of the other three was in certain important respects false.   The wife of People's witness Bendix (Muriel Weiss, not a trial witness) swears his trial testimony was in several respects false.   The theory of the motion appears to be that the conviction of Luciano rests on the trial testimony of the three

recanting witnesses and of Bendix, and that the moving affidavits so deeply discredit that evidence as to require the court to afford the relief asked. Assuming the correctness of the charge with respect to these four witnesses, the jury should have acquitted if they disbelieved all four. The argument based on that part of the charge falls, unless by the affidavits now submitted the trial testimony of all four is shown unworthy of belief. Apart from any particular theory of the defendants, a new trial should be granted if, in the opinion of the justice who presided at the former trial, newly-discovered evidence shows a reasonable likelihood that, had it been available and presented to the jury, a different result would have been reached; otherwise a new trial should be refused. Every material assertion in defendants' affidavits has been specifically met and answered by the People through competent testimony of respectable and reliable witnesses. Every step of each of the three recanters in supplying information to the prosecutor, from the moment of first contact to the time she took the stand, has been followed and described by the member or members of the staff to whom the information was given first hand. Every doubt sought to be thrown by their latest affidavits on any particular transaction and on the chronology and relation of the different transactions is fully cleared. After reading both sets of papers any impartial person must, I feel sure, conclude that the information used was fairly and honestly elicited by proper means and accurately recorded, and that any contrary version now put forward is untrue. The hypothesis of a victimized, " framed " Luciano is utterly destroyed. The information about him came too late in the case for that, from the reluctant lips of too many frightened men and women, and with too much internal evidence of truth.

Flo Brown, Mildred Balitzer and Nancy Presser were all interviewed under oath by the court, after the trial, in circumstances which would naturally inspire confidence and eliminate motive for falsehood, as well as supply the court with another opportunity for observing their demeanor. Each then freely reasserted the truth as testified to by her at the trial. They made statements to various persons at various times scattered through the remaining part of the year 1936 which are strongly corroborative of their trial testimony and utterly inconsistent with what are claimed to be their present motive and memory of the facts. In my opinion, their trial testimony was substantially true and their present statements were, in my opinion, induced by fear, financial pressure and craving for drugs, and are poisonously false.

The special prosecutor was scrupulous to place before the court and jury upon the trial every item of previous testimony contradictory in character and to reveal the exact facts as to the records

and habits of the witnesses. All the People's important witnesses and particularly those mentioned here were subjected hour after hour to exhausting, searching and merciless cross-examination. No revolting detail was overlooked, no opportunity for discovering contradictions and inconsistencies was left unexplored. The court, because of the circumstances, permitted the widest latitude of inquiry. In the charge the importance of noticing discrepancy was stressed and the jury received not only the specific instruction as to the four witnesses, Brown, Balitzer, Bendix and Presser, already mentioned, but also an express warning of the special care enjoined by law and dictated by experience in scrutinizing and weighing the evidence of prostitutes, criminals and the like.

Were the evidence in the latest affidavits of the three recanters and the other former witnesses for the People (now witnesses for defendant Luciano) presented to the same jury on behalf of the defendant Luciano, they would hear little not already disclosed and considered at the trial. If they received in addition, as they must, the new evidence in the answering affidavits, much of it highly favorable to the People, the latter's case would be as a whole much strengthened. It will not be forgotten, moreover, that a number of respectable and disinterested persons testified against Luciano at the trial and that as a witness in his own behalf he supplied very damaging testimony against himself. The court is satisfied that the defendant Luciano and the other intervening defendants cannot produce evidence such as, if before received, would probably have changed the verdict.

I turn to the separate grounds of the Liguori motion seemingly to the effect that the jury and other officials were guilty of improper conduct. The single affidavit submitted in support is made by defendant's attorney and counsel. Not a fact is stated on knowledge. The affiant seems to have overlooked the necessity, not to say the duty, of verifying information and substantiating belief. His hearsay statements about what the jury saw, heard and did are, if and so far as they can be considered material, contradicted under oath by all twelve of the jurors. He says he received the information from only one of them, and that particular juror denies he gave the information for which he is quoted. Whatever issue of fact remains must, of course, be decided against the defendant. No reason or authority is shown for granting a motion on such grounds at this time.

The defendants contend that the court should, in the circumstances, cause to appear and be examined and cross-examined the affiants upon whose supposedly new evidence the motion is based, or at least the recanting witnesses. Indeed, when reproached

by the prosecutor for withholding important evidence relevant to the credibility of two of the recanters, counsel attempted to justify themselves by saying that they had reserved disclosure for such later oral hearing.

The statute (Code Crim. Proc. § 465, subd. 7) reads, in part, as follows: " The court in such cases can, however, compel the personal appearance of the affiants before it for the purposes of their personal examination and cross-examination, under oath, upon the contents of the affidavits which they subscribe."

There appears to have been some original doubt of the court's power to compel the production for oral examination of affiants. Obviously, nothing in the language of the law sustains the contention of defendants, which rests rather upon their construction of two Court of Appeals decisions (*People* v. *Shilitano*, 215 N. Y. 715, and *People* v. *Arata*, 254 id. 565). These cases contain no support for such conclusion. They hold merely that where the court finds incomplete or otherwise insufficient the affidavits submitted, it may be desirable, in the interests of justice, to exercise the power to call and examine orally those who made them. In *People* v. *Eng Hing* (212 N. Y. 373), where lengthy affidavits had been submitted in support of a motion for a new trial and in opposition, without the appearance or examination of any witnesses, the same court sustained a denial of the motion. The court below said (Record on Appeal, vol. 2, pp. 191, 192): " There is no reason to believe that an oral examination of the persons making affidavits in support of the present motion or of other persons mentioned in the motion papers   *   *   *   would disclose evidence of a character which, had it been received upon the trial, would probably have changed the verdict."

Evidently no general practice in the case of recanting witnesses, independent of particular circumstances, exists. For example, in *People* v. *Cohen* (117 Misc. 158) the motion was granted without calling witnesses — that is to say, in spite of the burden upon the defendant, in spite of what the Court of Appeals in the *Shilitano* case said: " There is no form of proof so unreliable as recanting testimony " (218 N. Y. 161, 170). The court was there (in the *Cohen* case) able to say, without more ado, that there should be a new trial. Here, the court is satisfied without further investigation that there should not be a new trial. The provision permitting but not requiring oral examination applies primarily to witnesses who have made affidavits. If the court is able to reach its conclusion without calling them they need not and should not be called, since to carry the matter further would not serve the ends of justice or any public interest.

All motions for a new trial are denied upon all grounds.