■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALICE CRIMMINS, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered August 9, 1968, convicting her of manslaughter in the first degree, upon a jury verdict, and imposing sentence, upon which appeal there has been brought up for review an order of said court dated July 29, 1968, which denied her motion to set aside the verdict. Judgment reversed, on the law, and new trial ordered. The findings of fact below, resulting in the conviction, are affirmed. We have examined all the arguments advanced by counsel for both sides and we reverse and order a new trial on one ground alone. Visits by three trial jurors to the scene of the critical identification of the accused made by People's witness Earomirski were so fundamentally prejudicial and violative of appellant's rights that we are constrained under *People* v. *De Lucia* (20 N Y 2d 275) to order a new trial. One of the trial jurors visited the scene of identification alone at about 2:00 A.M. and tried to simulate the conditions of the identification as best he could in order to verify for himself the reliability and credibility of a key prosecution witness. The explanations and exculpations of two of the jurors at the hearing *after* the verdict are not sufficient safeguards of appellant's rights and could not sterilize or cure the harm that had already been completed (cf. *People* v. *Sher*, 24 N Y 2d 454). Mrs. Earomirski's identification occurred in July, 1965 and the jurors' visits to that scene were accomplished during the trial in May, 1968. The Court of Appeals in *De Lucia* (*supra*) relied on the Supreme Court of the United States (*Parker* v. *Gladden*, 385 U. S. 363) in declaring that when jurors visit the scene of a crime they thereby become " unsworn witnesses " against the defendant " in direct contravention of  *  *  * [his] right, under the Sixth Amendment, 'to be confronted with the witnesses' against  *  *  * [him] " (*People* v. *De Lucia, supra*, p. 279). The gravity of the error in the present case is that defendant did not know of the jurors' visits, had no way to test the jurors' observations in open court and had no opportunity to diminish or eliminate false impressions. The net effect of the jurors' visits was that they made themselves secret, untested witnesses not subject to any cross-examination. The error is not an innocuous and unimportant loophole in the law through which a guilty person may escape. It is a fundamental, serious and concrete flaw in the process that convicted appellant and it was discovered and disclosed at a time when no curative device could be interposed as in *Sher* (*supra*) to insulate the verdict. Christ, Munder and Kleinfeld, JJ., concur; Martuscello, J., concurs, with the following memorandum : I concur in the reversal on the ground assigned by the majority. However, I am of the opinion that the trial court erred in connection with offers of proof by defendant with respect to testimony by the People's witnesses Earomirski and Rorech. Earomirski testified that on the night of the crime she heard defendant refer to the pregnancy of her dog. Defendant sought to introduce evidence, through a disinterested witness,

that when the dog gave birth, several days after the commission of the crime, she stated that she did not know that the dog was pregnant. Such testimony would have affected the credibility of Earomirski, since defendant's statement was made at a time when she would have had no motive to falsify. Defendant was also precluded, on cross-examination of Rorech, from eliciting from him the fact that he had stated to a police inspector, in the presence of defendant, that defendant did not kill her daughter and that she was incapable of doing so. This statement was made two months after defendant allegedly admitted to Rorech that she had committed the crime. Such testimony would have been the expression of an opinion inconsistent with Rorech's testimony (see *Larkin* v. *Nassau Elec. R. R. Co.*, 205 N. Y. 267, 269). Beldock, P. J., dissents and votes to affirm the judgment, with the following memorandum: The sole ground for reversal, as found by the majority, is predicated upon the unauthorized visit by three jurors to "the scene of the critical identification of the accused" made by one of the prosecution's witnesses. While I agree that such a viewing was improper (*People* v. *De Lucia,* 20 N Y 2d 275), I do not agree that such impropriety, in and of itself, requires the granting of a new trial. Rather, it is my view that a defendant must demonstrate the prejudicial effect of such impropriety before a judgment of conviction may be set aside. At bar, the Trial Justice found, after a post-verdict hearing, that the visits of these jurors to the scene did not influence them in reaching the ultimate verdict, that they did not influence the other jurors in the making of their decision on the verdict, and that defendant was not "prejudiced by the happening, the incidents or the results of the visits". The majority of the court does not take issue with these findings but concludes, as a matter of law, that proof of the unauthorized visits is sufficient to warrant a new trial. However, I am in accord with the Trial Justice's conclusion that the application of the broad proposition enunciated in *People* v. *De Lucia* (*supra,* p. 280) that "proof of the fact of the unauthorized visit is sufficient to warrant a new trial without proof of how such visit may have influenced individual jurors" was meant to be limited to the facts of that case, from which the potential of prejudice was apparent. In my opinion, the facts of this case conclusively negate the claimed prejudicial effect of the jurors' conduct.