Chief Judge Breitel
Defendant has twice been convicted, after jury trials, of manslaughter in the first degree for killing her daughter. She was sentenced from 5 to 20 years’ imprisonment.
On this appeal, defendant contends that she was wrongfully *409 denied a hearing by the Supreme Court on her motion to vacate judgment. The Appellate Division affirmed.
The critical issue is whether the denial, without a hearing, of defendant’s motion to vacdte judgment upon the ground of newly discovered evidence may be reviewed by this court. The dissenter’s challenge that there has been a denial of justice makes imperative consideration and elaboration of the issue and the questions of law and fact which resolve them conclusively.
There should be an affirmance. The power to review a discretionary order denying a motion to vacate judgment upon the ground of newly discovered evidence ceases at the Appellate Division. This court, limited in a noncapital criminal action to reviewing questions of law only, has no power to review the discretionary denial of a motion to vacate judgment upon the ground of newly discovered evidence. Not to be confused is this court’s power to set aside a conviction on the ground that it is not supported by proof sufficient to establish guilt beyond a reasonable doubt as a matter of law (see People v Santos, 38 NY2d 173, and cases cited).
Even if the denial of such a motion were reviewable, the same result would obtain. The "newly discovered evidence” consisted only of an affidavit of a "witness” submitted some seven years after the events described in it had occurred. The affidavit was complete on its face, that is, it presented fully, and in the best possible light, all the evidence the "witness” could possibly offer on defendant’s behalf. Assuming affiant’s sincerity, his averments were in part conclusory and were highly unreliable as to accuracy of recollection. The averments did not disclose a probability, as opposed to a mere possibility, that the jury would have rejected the overwhelming evidence of defendant’s guilt and returned a verdict more favorable to defendant. Thus, the court below properly denied the motion without a hearing.
In 1968, defendant was convicted, after jury trial, of manslaughter in the first degree for killing her daughter. That conviction was reversed on appeal and a new trial ordered (33 AD2d 793, affd 26 NY2d 319).
Thereafter, in 1971, defendant was convicted, after jury trial, of murder in the first degree for killing her son, five years of age, and, for the second time, of manslaughter in the first degree for killing her daughter, four years of age. The Appellate Division reversed the murder conviction, on the law *410 and the facts, and dismissed the applicable murder count in the indictment. That court also reversed the manslaughter conviction, on the law only, and ordered a new trial (41 AD2d 933). This court affirmed with respect to the dismissal of the murder charge, but reversed the order granting a new trial and remitted the appeal to the Appellate Division for a determination of the facts (36 NY2d 230, Cooke and Fuchs-berg, JJ., dissenting in an opn by Cooke, J.).
The Appellate Division, on remittal, affirmed the judgment of conviction. It also affirmed an order denying defendant’s double-branched motion to vacate judgment upon (1) the ground of newly discovered evidence and (2) asserted improper conduct by the prosecution in withholding from her information allegedly helpful to her defense (48 AD2d 663). Leave to appeal to this court was granted by a Justice of the Appellate Division. On the present appeal, defendant has limited her argument to whether she was entitled to a hearing in connection with her motion to vacate judgment.
The evidence upon the second trial compels the conclusion that defendant killed her daughter. At the second trial, Joseph Rorech, one of defendant’s paramours, testified that she had confessed to him that she had killed her daughter. Rorech also recounted other conversations with defendant during which she indicated her guilt.
On July 14, 1965, defendant’s daughter’s body had been found in a vacant lot near defendant’s residence. An autopsy revealed that the little girl had been asphyxiated by human agency. From a scientific analysis of the contents of her stomach, it was established that the girl had died from less than one half hour to no more than two hours after eating. Defendant admitted to police officers investigating the disappearance of her children that, on the evening of July 13, she had fed them a meal which began at 7:30 p.m. and ended at 8:15 p.m. Thus, it would appear that the daughter was killed between approximately 8:30 and 9:00 or 9:30 p.m. Defendant’s own statements establish that she, separated from her husband, had exclusive custody of the children during those hours.
As Judge Jones recounted, on behalf of a majority of the court, in People v Crimmins (36 NY2d 230, 242, supra), "In addition to other compelling circumstantial evidence, there was eyewitness testimony * * * that on the night before the *411 daughter’s body was found, defendant, carrying what was described as a 'bundle’ and accompanied by an unidentified man, was seen leading her son from the Crimmins home; that as the man threw the 'bundle’ into a parked car defendant cried out, 'Please don’t do this to her’, to which the man responded, 'Does she know the difference now? * * * Now you’re sorry.” This eyewitness was Mrs. Sophie Earomirski, one of defendant’s neighbors.[1]
Moreover, still other evidence pointed to defendant’s guilt. For example, defendant’s trial theory was that her children had been abducted from the house by outside kidnappers. Since the children presumably were asleep in their locked bedroom at the time of the "abduction”, if the defense theory were valid, the kidnappers must have entered the Crimmins residence and removed the children through the bedroom window. Yet, police investigation the following day established that layers of dust on a chest of drawers in the bedroom abutting the window and on the window sill were undisturbed. As the court stated, "the prosecution conclusively exploded defendant’s theory of an outside kidnapper” (36 NY2d, at p 243).
Thus, the majority concluded (36 NY2d, at pp 242, 243, supra): "there was overwhelming proof that this defendant was guilty of manslaughter in the death of her daughter * * * We read this record as leading only to a single, inexorable conclusion, as two juries have indeed found: defendant was criminally responsible for the death of her daughter.”[2]
Indeed, the proof of defendant’s guilt was so overwhelming that the case has withstood an attack based upon trial errors committed by the prosecution. Those errors were held to be harmless: in the case of constitutional error, beyond a reasonable doubt; and in the case of nonconstitutional error, because "there is no significant probability in the light of the overwhelming proof that, had it not been for the errors which occurred, this jury would have acquitted the defendant or that a third jury might do so” (36 NY2d, at p 243). Of course, the dissenters on that appeal did not and still do not agree with *412 that evaluation (see dissenting opn by Cooke, J., at pp 243-250).
This statement of the harmless error rule with respect to nonconstitutional errors did not constitute a new rule. As the court stated, the "doctrine [of harmless error] has received expression in our court over the last 20 years” (36 NY2d, at p 239). The rule restated on the second Crimmins appeal was an accommodation to what had developed in the area of harmless error over the years, from the time of the Code of Criminal Procedure to the CPL, and has survived the latter day imposition by the Supreme Court of a harmless "beyond a reasonable doubt” rule for Federally-declared constitutional error. Nonconstitutional error, as has been the statutory rule since 1881 and the decisional law in this State for over one hundred years, is harmless when, given the overwhelming proof of a defendant’s guilt, there is no significant probability that the jury would have acquitted the defendant if the error had not been committed (see, e.g., Code Crim Pro, § 542 [L 1881, ch 504, § 542]; CPL 470.05, subd 1; Shorter v People, 2 NY [Comstock] 193, 202; People v Corey, 148 NY 476, 493-494; People v Marendi, 213 NY 600, 619; People v Crimmins, 36 NY2d 230, 239-240, and cases cited at p 242; see, also, Stokes v People, 53 NY 164, 180).
It has been useful in the context of this case to examine the harmless error rule applicable to nonconstitutional error, for it is similar to the statutory standard for determining when a motion to vacate judgment upon the ground of newly discovered evidence should be granted (see CPL 440.10, subd 1, par [g]).
The "newly discovered evidence” upon which defendant’s motion to vacate judgment is in part based is an affidavit by one who came forward with his story some seven years after the events he narrates. The would-be witness averred that, in the early morning of July 14, 1965, shortly after 1 A.M., he had picked up two small children, a boy and a girl, "hitchhiking” in the vicinity of 150th Street and "probably” 75th Avenue in Queens County. He learned from the boy "that he [the boy] knew exactly where 'home’ and his 'daddy’ was.” He drove, under the boy’s direction, for several blocks, and eventually let the children out at the southwest corner of 162nd Street and 71st Avenue. Supposedly a responsible individual, affiant was "quite sure” these small children "were safe and sound” at this spot where he left them in the wee hours of the *413 morning. If they had been the Crimmins children they would have been four and five years of age, respectively.
Affiant did not learn the names of the children. Despite this, he stated unequivocally in the affidavit that these two children were the Crimmins’, a conclusion admittedly reached only after reading about the killing in the newspapers a few days later. He did state in the affidavit that the boy "could very well have” identified his companion as "Missy” (defendant’s daughter’s nickname) instead of "my sister”, as he had first thought. He does admit, however, that he arrived at this conclusion only after reading newspaper accounts of the first trial, three years after the incident. The affidavit concludes with an uncertain hypothesis of how the Crimmins children met their fate.
The trial court,, as noted, denied, without a hearing, defendant’s motion to vacate judgment upon the ground of newly discovered evidence based on the affidavit.
CPL 440.10 (subd 1, par [g]) provides that:
''At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: * * *
"New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such a character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence”.
CPL 440.10 (subd 1, par [g]) is the successor to subdivision 7 of section 465 of the former Code of Criminal Procedure, which provided for application for a new trial on similar, but somewhat more stringent, grounds (see 6 Zett, New York Criminal Practice, par 50.3, subd [1], par [g]). Unlike a post-conviction application for a new trial under the code, which had to be made within one year after judgment, no time limitation is prescribed for a motion to vacate judgment under CPL 440.10 (subd 1, par [g]) (compare former Code Crim Pro, §466).
CPL 440.10, captioned "Motion to vacate judgment”, was intended to encompass contentions which formerly could have *414 been raised on an application for postconviction relief in the nature of coram nobis, a postconviction application for a new trial upon the ground of newly discovered evidence, and those which may be raised in State and Federal habeas corpus proceedings, as well as other contentions (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.10, at p 183; Pitler, New York Criminal Practice Under the CPL, pp 830-831).
Historically, neither an order denying coram nobis relief nor an order denying a postconviction application for a new trial upon the ground of newly discovered evidence was appealable (see People v Gersewitz, 294 NY 163, 166, app dsmd 326 US 687; People v Trezza, 128 NY 529, 533). This was so because the right to appeal in a noncapital criminal case is purely statutory, and no statute authorized such appeals (id.; compare a prejudgment motion for a new trial upon the ground of newly discovered evidence, which, as a part of the judgment roll, could be appealed under section 517 of the former Code of Criminal Procedure [see People v Priori, 163 NY 99, 107-108; Cardozo, Jurisdiction of the Court of Appeals (2d ed), § 122]).
In 1947, however, section 517 of the former Code of Criminal Procedure was amended to authorize an appeal from an order denying a "motion to vacate a judgment” (L 1947, ch 706; see Matter of Bojinoff v People, 299 NY 145, 149). The amendment was initially interpreted to apply to a denial of a postconviction application for a new trial upon the ground of newly discovered evidence (see People v Greenfield, 275 App Div 862, 863). In 1953, however, section 517 was again amended to make clear that an appeal was authorized only from an order denying an "application for a writ of error coram nobis” (L 1953, ch 602; see People v Palumbo, 282 App Div 1059). Thus, before the enactment of the CPL, a denial of a postjudgment application for a new trial upon the ground of newly discovered evidence remained nonappealable (see, e.g., People v Baxter, 40 AD2d 551; People v La Rocca, 37 AD2d 974; People v Hendry, 13 AD2d 793; Pitler, op. cit., at p 834).
With the passage of CPL 450.15 (subd 1) and CPL 450.90 (subd 1), an order denying a motion under CPL 440.10 (subd 1, par [g]) to vacate judgment upon the ground of newly discovered evidence was made appealable (see Pitler, op. cit., at p 834). While this would appear to resolve the issue of appealability, it does not settle the question of reviewability by this *415 court. The Legislature is free to expand or contract by statute the classes of noncapital criminal cases which may be appealed to the Court of Appeals. The court’s power to review may not, however, be expanded by statute alone, and the CPL must be read in context of constitutional limitations, whether the CPL is explicit or not (compare NY Const, art VI, § 3, subd b with subd a).
Section 3 of article VI of the Constitution provides that "The jurisdiction of the court of appeals shall be limited to the review of questions of law except where the judgment is of death”. Thus, CPL 470.35 (subd 1) provides that, upon an appeal to the Court of Appeals from an order of an intermediate appellate court affirming a judgment, sentence or order of a criminal court, this court may consider only questions of law (see, e.g., People v Robinson, 36 NY2d 224, 228).
The power to vacate judgment upon the ground of newly discovered evidence and grant a new trial rests within the discretion of the court (see, e.g., People v Salemi, 309 NY 208, 215; People v Patrick, 182 NY 131, 178; People v Buchanan, 145 NY 1, 30, app dsmd 158 US 31 [capital cases]). It has been repeatedly held that this type of discretion is unlimited in the lower courts and thus this court has no power in a noncapital case to review their exercise of discretion (see People v Fein, 18 NY2d 162, 169, app dsmd and cert den 385 US 649; People v Mistretta, 7 NY2d 843, 844; People v Girardi, 303 NY 887, 888; People v Luciano, 275 NY 547, 548; People v Bonifacio, 190 NY 150, 152; Cohen and Karger, Powers of the New York Court of Appeals, p 586 and n 13; p 723 and n 97; p 745 and n 40; see, also, Cardozo, op. cit., at pp 49, 292; but see People v Welcome, 37 NY2d 811 [a brief memorandum decision apparently assuming reviewability because the court did not dismiss the appeal, but relying only upon a capital case, People v Shilitano [218 NY 161]).
Before completing discussion of the distinction between appealability and reviewability of issues in this court, reference should be made to People v Slaughter (37 NY2d 596), recently decided by this court. There, under CPL 330.30 rather than CPL 440.10, a motion was made before judgment for a new trial upon the ground of newly discovered evidence. Hence, its denial was appealable to the Court of Appeals even under the statutes and practice antedating the CPL, as discussed above. Without more the exercise of discretion in the Slaughter case would not have been reviewable in this court, *416 although the denial itself would be appealable. However, there was more. The allegedly newly discovered evidence related to possibly false testimony by police officers, a now classic ground for relief in coram nobis because of the "fraud on the court”, even as the alleged suppression by the prosecutor of exculpatory evidence in this Crimmins case is both appealable and reviewable in this court, as discussed below. The court directly disposed of the issue therefore in the Slaughter case, citing notably to the treatise by Cohen and Karger (supra) at page 742, which refers to this court’s very limited powers of review in noncapital criminal cases.
Moreover, even in a capital case, where its jurisdiction is not limited to issues of law, this court has been most reluctant to overturn the lower courts’ exercise of discretion in denying a motion for a new trial upon the ground of newly discovered evidence (see, e.g., People v Salemi, 309 NY 208, 215, supra; People v Patrick, 182 NY 131, 178, supra; People v Buchanan, 145 NY 1, 30, app dsmd 158 US 31, supra).
Because this case has been so much litigated and because of the dissenter’s plaint that justice has been denied, it is excusable, perhaps even necessary so that the specter of justice denied be laid to rest, to examine the question as if it were reviewable (cf. People v Fein, 18 NY2d 162, 169, supra). Nevertheless, the denial, without a hearing, of the motion to vacate judgment upon the ground of newly discovered evidence was proper.
Whether or not to hold a hearing on a motion to vacate judgment upon the ground of newly discovered evidence is discretionary with the court to which the motion is addressed (see, e.g., People v Welcome, 37 NY2d 811, supra; People v Eng Hing, 212 NY 373, 386; People v Patrick, 182 NY 131, 178, supra; People v White, 44 AD2d 749, 750; People v Dinan, 15 AD2d 786; People v Maynard, 80 Misc 2d 279, 283). As this court has made clear in capital cases where its power to review is not limited to the law, a hearing should be held to promote justice if the issues raised by the motion are sufficiently unusual and suggest searching investigation (People v Shilitano, 218 NY 161, 169, 170, supra; see People v Arata, 254 NY 565, 565-566; cf. People v White, 309 NY 636, 640-641; see, also, People v Seidenshner, 152 NYS 595). This standard is, of course, equally applicable to noncapital cases (see People v Luciano, 164 Misc 167, 171, affd 251 App Div 887, app dsmd 275 NY 547; People v Gordon, 142 Misc 25, 25- *417 26). To grant such a hearing where the court is able to reach its conclusion on the papers alone would serve no end of justice but would only protract futile litigation (see People v Luciano, 164 Misc, at p 171, supra).
Although defendant has limited her argument to whether she was entitled to a hearing on her motion, the dissent instead has addressed the merits of the denial of the motion. Indeed, the dissent offers no rationale for its unstated assumption that a hearing on the motion would somehow result in a decision more favorable to defendant from the hearing Judge. More likely is the People’s characterization of what a hearing would accomplish: "Indeed, to have afforded appellant a hearing would merely have provided the prosecution with an opportunity to impeach [affiant’s] credibility.”
This is so because the affidavit is detailed and complete on its face. It obviously represents a determined effort by affiant, or whoever prepared his affidavit, to present all of the evidence he could possibly offer on defendant’s behalf. Indeed, the affidavit goes beyond what affiant thought he had observed in the early morning of July 14; affiant gives his conclusion, based upon his later reading of a newspaper account of the killing, that the children he picked up were the Crimmins’. He offers an imaginative alternative hypothetical explanation, worthy of concoction by an A. Conan Doyle, consonant with affiant’s sworn version of what he thought he saw and heard, of how the Crimmins children met their fate. Thus, a hearing on this motion would have been unnecessary and would have served only to postpone resolution of the controversy.[3]
However "understandable” affiant’s reasons for the seven-year delay in disclosure may be regarded, the fact remains that affiant’s recollection of the events of the early morning of July 14, 1965 must be recognized as inevitably influenced and inevitably colored by the passage of time and his acknowledged familiarity and undoubtedly obsessed concern with newspaper accounts of the case. Indeed, affiant admitted that his intriguing conclusion that the two children he picked up were the Crimmins’ was the product of his independently-acquired newspaper "knowledge” of the case. Jurors and *418 courts are confined, but also benefited, by a testimonial record developed in the adversarial process.
Moreover, even fully crediting affiant’s sincerity, the denial, without a hearing, was proper because the court correctly assessed its probable impact upon the jury. Defendant has twice been convicted, after jury trials, of killing her daughter. As discussed above, her guilt was shown by overwhelming proof. There is no probability, as opposed to speculative possibility, that the jury would have returned a verdict more favorable to defendant had they had affiant’s testimony. In saying even this, one must assume that affiant’s testimony would be admissible, that is, that his belatedly disclosed, newspaper-stimulated description of the two children he "picked up” was sufficient to identify them as the Crimmins children, an uncertain assumption at best.
In sum, a hearing would only have delayed resolution of the motion supported by an affidavit complete on its face and, therefore, was not necessary. Moreover, there was no significant probability that the evidence in the affidavit if introduced at trial would have resulted in a verdict more favorable to defendant. Thus, the motion was properly denied without a hearing.
Defendant also moved to vacate judgment upon an additional ground, namely, that of asserted improper conduct by the prosecution in withholding from her information, provided by another deponent, allegedly helpful to her defense. This branch of her motion, brought under CPL 440.10 (subd 1, pars [f], [h]), is in the nature of an application for a writ of error coram nobis (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.10, at p 183). The denial of this branch of her motion may, contrary to the rule which obtains with respect to newly discovered evidence, be reviewed by this court to determine whether there has been an abuse of discretion as a matter of law (see Matter of Bojinoff v People, 299 NY 145, 151, supra; Cohen and Karger, op. cit., at p 745 and n 43). The distinction is based upon the character of the ancient remedy of the writ of error coram nobis, a remedy fashioned to inform the court of facts, such as, for example, fraud not reflected in the record, which as a matter of law would undermine the basis of its judgment (see, e.g., People v Sullivan, 3 NY2d 196, 198; see, generally, Cohen, Post-Conviction Relief in the New York Court of Appeals: New Wine in *419 Broken Bottles, 35 Brooklyn L Rev 1, 6). Even in coram nobis the findings of fact in the courts below are not reviewable in the Court of Appeals. The facts must be taken as found. The rules of law, however, as applied to the facts are, of course, reviewable in this court (see People v White, 309 NY 636, 641, supra). When the issue in the Court of Appeals is whether in coram nobis a hearing was properly denied, that determination may be reviewed only for an abuse of discretion as a matter of law (see People v Richetti, 302 NY 290, 294-295; accord, e.g., People v Beasley, 25 NY2d 483, 487; People v Bagley, 23 NY2d 814, 815; People v Silverman, 3 NY2d 200, 203; People v Guariglia, 303 NY 338, 342-343; cf. People v Session, 34 NY2d 254, 256). The bifurcating principle is that in coram nobis the judgment is attacked as infirm, while on motion to vacate judgment upon the ground of newly discovered evidence the validity of the judgment is not attacked, only the likelihood of a similar verdict being rendered if there were an enlargement of the evidence on the principle issue.
The affidavit of the other deponent was insufficient to ground an inference of improper suppression of evidence by the prosecution. Perhaps most important it does not contain relevant or competent evidence on the issue of guilt or innocence, but at best supplies clues arguably meriting investigation. The defendant has now had for some time opportunity, through unusually adept lawyers, to make such an investigation. There is still nothing beyond a remote speculative inference to offset what may be a strange coincidence involving two other little children, crediting the affidavit without qualification. The issue was not the truth and accuracy of the affidavit but whether one could say that there had been an improper suppression by the police rather than a reasonable exercise of judgment. This issue was determinable from the papers. There is no disagreement in the court concerning this branch of defendant’s motion.
It is true that the road to justice in this 10-year-old case has been long. Much too long, indeed, on any view. Its length should not be further extended, however, by preferred "newly-discovered” evidence, baseless and weightless, nor should it be extended by erroneous,' however dextrous, misapplication of this court’s limited power to review and violation of time-tested and accepted grounds for ordering new trials in criminal actions. The road to justice, short or long, should be the road to justice, and not a primrose path.
*420 Accordingly, the order of the Appellate Division should be affirmed.

. Notably, Judge Jones in referring to "compelling” evidence, addressed himself to the circumstantial evidence in the case rather than to the testimonial evidence of Mrs. Earomirski, a witness whose credibility was severely attacked by the defense.

. It was not on this appeal but on the first appeal, after the first trial, to this court, that Mrs. Earomirski’s testimony was described, in the opinion from which the dissenter quotes, as "essential” to the prosecution (26 NY2d, at pp 322, 324).

. Moreover, the motion was denied by the very trial court which, in the dissenter’s words, must have been sensitive to the "pulsebeat of the courtroom.” Indeed, it is for this reason that the motion to vacate judgment must be made to the court in which it was entered (see CPL 440.10, subd 1). '