OPINION OF THE COURT
Charles J. Tejada, J.
On September 5, 2002, Kevin Richardson, Antron McCray, and Raymond Santana, the defendants, filed and served a no *482 tice of motion, pursuant to CPL 440.10 (1) (g), motion to vacate judgment, for an order vacating their convictions after a jury trial of charges contained in Indictment Number 4762/89, upon the sole grounds of newly discovered evidence. Defendants Richardson, McCray and Santana were represented by Michael W. Warren, Esq., and Roger Wareham, Esq. Defendant Salaam was represented by Myron Beldock, Esq., and defendant Wise was represented by Eric Seiff, Esq. The People were represented by Nancy E. Ryan and Peter Casolaro of the New York County District Attorney’s Office. On September 9, 2002, and on September 24, 2002, Yusef Salaam and Kharey Wise, respectively, filed and served a notice of motion, pursuant to CPL 440.10 (1) (g) for an order vacating each of their convictions after a jury trial of charges contained in Indictment Number 4762/89, also upon the sole grounds of newly discovered evidence. Each motion alleged that the newly discovered evidence is a statement from a convicted murderer and serial rapist and forensic DNA evidence. Those motions are hereby consolidated.
Given that the convictions are more than a decade old, that they involve two separate trials, a 13-count indictment, multiple defendants, voluminous documentary materials, numerous witnesses, forensic evidence, complex evidentiary issues and substantial legal issues, the court, initially, directed the People to file and serve on defendants their affirmation in response to motion to vacate judgment of conviction by December 5, 2002. The defendants’ reply to the People’s affirmation was to be filed and served by January 6, 2003. This court’s final decision was to be rendered on February 6, 2003. These time frames were designed, as requested by the parties, to give each side an adequate amount of time to address this matter in a full and fair manner and to prepare for a hearing should the court deem that necessary.
On December 5, 2002, the People submitted their affirmation in response to motion to vacate judgment of conviction.
A motion requesting that the court render its decision before February 6, 2003 has been filed by the defendants. Although that motion does not waive filing of a reply, the only conclusion which can be gleaned from this new motion is that the defendants are deemed to have waived the opportunity to reply and that, for the purposes of this motion, they do not contest the People’s version of the facts as presented in the People’s *483 affirmation. Consequently, the following constitutes this court’s opinion, decision and order on the defendants’ motion to vacate judgment.
This decision rests solely on consideration of the facts as contained in the defendants’ motion, which includes the affirmations of Michael W. Warren, Esq., Earl A. Rawlings, Esq., Myron Beldock, Esq., and Eric A. Seiff, Esq., and documentary proof in the form of a notarized statement of Matías Reyes, and the affirmation of Nancy E. Ryan, Esq., Assistant District Attorney, Chief of the Trial Division.
The convictions which the defendants seek to vacate are more than a decade old. Specifically, on August 18, 1990, a jury convicted McCray, Salaam and Santana, who were tried jointly on a 13-count indictment, of one count of assault in the first degree and rape in the first degree for the attack on a female victim (hereinafter referred to as the female jogger or the Central Park jogger); robbery in the first degree and three counts of assault in the second degree for the attack on John Loughlin; assault in the second degree for the attack on David Lewis; and riot in the first degree. Since each defendant was less than 16 years of age, the trial court set aside all their convictions except those for first degree robbery and rape.
On December 11, 1990, a jury found Richardson guilty of each count of the indictment. Wise, who was tried jointly on a 13-count indictment with Richardson, was convicted of assault in the first degree and sexual abuse in the first degree with respect to the attack on the Central Park jogger, and riot in the first degree. Because of Richardson’s age, the trial court set aside all of Richardson’s convictions except for attempted murder in the second degree, first degree robbery, rape and sodomy.
Yusef Salaam’s convictions were affirmed by the Appellate Division (187 AD2d 363) and by the Court of Appeals (83 NY2d 51). Antron McCray’s convictions were also affirmed by the Appellate Division (198 AD2d 200), and the Court of Appeals denied leave to appeal (82 NY2d 927). The same holds true for Kharey Wise (204 AD2d 133, lv denied 23 NY2d 973). Kevin Richardson’s convictions were affirmed by the Appellate Division (202 AD2d 227). Raymond Santana never perfected an appeal.
In deciding a motion for a new trial based on newly discovered evidence, Justice Irving Lang wrote, over a quarter of a century ago, that “The court recognizes that a jury verdict is not to be set aside but for the most compelling reasons. A jury verdict is the most desired, if not perfect, resolution of a case *484 in our criminal justice system. But that verdict, to have any meaning, must be the result of a careful consideration of all the material facts.” (People v Maynard, 80 Misc 2d 279, 291 [Sup Ct, NY County 1974].) This statement embodies the spirit and the letter of CPL article 440.
Article 440 recognizes that trials are human endeavors and that there are times when evidence is not discovered in time to be presented to a jury so that its verdict can be the result of a careful consideration of all material facts. When this occurs CPL article 440 sets forth a procedure that allows a court to vacate a conviction and order a new trial in which the newly discovered evidence may be presented.
This procedure requires that the motion for a new trial “must be made in writing” and that it must contain “sworn allegations” and “information supporting or tending to support the allegations.” (CPL 440.30 [1].) The People may file an answer to the moving papers. The court may also allow the defendants to file a reply to the People’s answer. After all papers are filed, the court must consider “whether the motion is determinable without a hearing to resolve questions of fact.” (CPL 440.30 [1].)
It is well recognized that the power to vacate judgment upon the ground of newly discovered evidence and to grant a new trial rests within the discretion of the court. (See People v Sa-lemi, 309 NY 208, 215 [1955]; People v Patrick, 182 NY 131, 178 [1905]; People v Buchanan, 145 NY 1, 30 [1895].)
Similarly, whether or not to hold a hearing to resolve questions of fact on a motion to vacate judgment upon the ground of newly discovered evidence is discretionary with the court to which the motion is addressed. (See People v Welcome, 37 NY2d 811, 813 [1975]; see generally People v Eng Hing, 212 NY 373, 386 [1914]; People v Patrick, 182 NY 131, 178 [1905]; People v White, 44 AD2d 749, 750 [3d Dept 1974]; People v Dinan, 15 AD2d 786 [2d Dept 1962]; People v Maynard, 80 Misc 2d at 283.)
Given that defendants do not contest the People’s version of the facts, a hearing to resolve questions of fact is not necessary. Moreover, “[t]o grant such a hearing where the court is able to reach its conclusion on the papers alone would serve no end of justice but would only protract futile litigation.” (See People v Crimmins, 38 NY2d 407, 417 [1975], citing People v Luciano, 164 Misc 167, 171 [Sup Ct, NY County 1937].)
Additionally, proceeding with the determination of this motion at this point is also consistent with CPL 440.30 (3), which states, in part, that,
*485 “Upon considering the merits of the motion, the court must grant it without conducting a hearing and vacate the judgment
“(a) The moving papers allege a ground constituting legal basis for the motion; and
“(b) Such ground, if based upon the existence or occurrence of facts, is supported by sworn allegations thereof; and
“(c) The sworn allegations of fact essential to support the motion are either conceded by the people to be true or are conclusively substantiated by unquestionable documentary proof.” (CPL 440.30 [3].)
A motion for a new trial based on newly discovered evidence is a statutory remedy and may be granted only in the sound discretion of the court. (People v Patrick, 182 NY at 178.) The exercise of discretion requires a careful and dispassionate examination of the facts, as presented in the parties’ papers and the application of the law to the facts.*
This requires an examination of two aspects of the newly discovered evidence: (1) the conduct of the defendant; whether he could have discovered the evidence at the time of trial by due diligence, and whether after the discovery of the alleged new evidence, he made his motion with due diligence, and (2) the nature of the evidence; whether the new evidence is of sufficient character to create the probability it would have resulted in a more favorable verdict. “The evidence is viewed only in context of its effect on the previous outcome of the trial. * * * It may be said that the rule of newly discovered evidence presupposes no suppression and an otherwise fair trial and, but for the new evidence, no further aspects of the trial need be considered.” (Maynard, 80 Misc 2d at 284; see also CPL 440.10 [1] [g].)
The leading case on the issue of newly discovered evidence, People v Salemi (309 NY 208 [1955]), sets the criteria for determining the sufficiency of the new evidence as: (1) it must be of such nature as would (probably) change the verdict should a new trial be granted; (2) it must have been discovered since the previous trial; (3) it must be of such nature that it could *486 not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and (6) it must not be impeaching or contradictory of former evidence.
This criterion is not unique. Both sister state and federal courts follow similar criterion. (Berry v State, 10 Ga 511, 527 [1851]; Fed Rules Grim Pro rule 33; see generally, United States v Johnson, 327 US 106 [1946]; United States v Diggs, 649 F2d 731 [9th Cir 1981].)
Examining first whether the new evidence was discovered since the previous trial and whether it was of such nature that it could not have been discovered before the trial by the exercise of due diligence, this court makes the following conclusions.
It is uncontested that in January 2002, Matías Reyes, for the first time, informed law enforcement officials that he, alone, committed the rape and other crimes concerning the female jogger, for which several defendants were convicted, and that DNA testing confirms his participation in the rape. This evidence could not have been produced at trial in 1990, even with due diligence on defendants’ part. It simply did not exist until 2002.
Each defendant’s attorneys’ affirmation is complete on its face. Each presents fully all the evidence, in the best possible light, that could be offered on the defendant’s behalf, relating solely to the convictions concerning the female jogger. The moving papers allege a ground constituting a legal basis for the motion. Specifically, each defense attorney has affirmed, under a penalty of perjury, that the confession of Matías Reyes and DNA evidence relating to that evidence, would probably influence a jury to render a verdict more favorable to the defendants and each motion contains documentary proof, Reyes’ notarized confession, to support this contention. Each motion was made with due diligence after the discovery of the newly discovered evidence.
The People’s affirmation is complete on its face and also presents fully all the evidence, in the best possible light, that could be offered on the People’s and on the defendants’ behalf. Specifically, the People affirm, under a penalty of perjury, that the history of the prosecution of the defendants began on “April 19, 1989, when a series of incidents occurred in Central Park involving members of a group of more than 30 teenagers * * * At approximately 9:05 p.m. [a man] was accosted by a band of youths on the East Drive. A few minutes later [another person] was assaulted and robbed. He was left unconscious. At ap *487 proximately 9:12 to 9:15 p.m. a couple on a tandem bicycle was menaced. Moments later, a taxi cab driver had rocks hurled at his cab and was threatened when he got out of the car to investigate. Beginning at about 9:24 p.m. and continuing to about 9:45 p.m. a series of four male joggers were set upon on the jogging path at the northern end of the Central Park reservoir. Two of the male joggers escaped unharmed but two were assaulted. [One] was not seriously hurt, however, John Loughlin was knocked to the ground, kicked, punched, and beaten with a pipe and stick. He was knocked unconscious and sustained significant but not life threatening injuries.”
The People’s affirmation further states that, “at approximately 1:30 a.m., an unconscious woman was found by two men walking on a foot path through Central Park. Police and medical personnel were summoned. The victim, a twenty-nine-year-old white woman who came to be known as the ‘Central Park jogger,’ was removed to the hospital. She had been badly beaten about the head, and suffered numerous bruises, scratches, and abrasions elsewhere on her body. Her t-shirt had been rolled into a ligature and used to tie her in a distinctive fashion. Subsequent investigation revealed that she had been raped and that her radio headset and keys were missing.”
“Raymond Santana and Kevin Richardson, as well as a number of other youths were apprehended at approximately 10:15 p.m., on April 19, 1989, after police officers responding to reports concerning some of the incidents spotted them on the western outskirts of the park. Antron McCray, Yusef Salaam and Kharey Wise were brought in for questioning on April 20, 1989, after they had been identified by other youths as having been present at or participated in some of the events in the park.”
“Each of the defendants was questioned by detectives and made one or more statements. All five of the defendants implicated themselves in a number of the crimes which had occurred in the park. None of them admitted actually raping the Central Park jogger, but each gave an account of events in which he made himself an accomplice to the crime. Defendant Wise was 16 years old, defendants Salaam and McCray were 15 and defendants Richardson and Santana were 14.”
The People further inform the court that they first learned of the newly discovered evidence in February 2002, when the New York County “District Attorney’s Office was notified that an inmate had come forward with a claim that he had attacked and raped the Central Park jogger, and that he had committed *488 the attack alone. The inmate, Matías Reyes, had informed a Corrections Officer of his claim. On January 17, 2002, he was formally interviewed by an investigative supervisor from the Inspector General’s office. Following this investigation, information about his contentions was forwarded to the District Attorney’s office. Reyes is serving sentences totaling thirty-three and one-third years to life imprisonment for three rape/ robberies, one rape/murder, and one robbery that he committed between June 11 and August 5, 1989.” The sentences, which were imposed on November 1, 1991, “rested in part on DNA evidence taken from his victims and from the scenes of his crimes, which matched the DNA in a sample taken from him * * * Upon learning of Reyes claims, efforts were made to locate the evidence from both cases, and the [Federal Bureau of Investigation] FBI laboratories were asked to make a comparison. On May 8, 2002, the District Attorney’s office was notified that Reyes’ DNA matched the DNA taken from the sock that had been found at the Central Park crime scene.”
Further, as to what constitutes the newly discovered evidence, the People concede that “The newly discovered evidence in this case consists of the account of events provided by Ma-tías Reyes, who states that he alone attacked and raped the Central Park jogger; DNA test results which conclusively establish that Reyes was the sole source of semen found on the sock at the crime scene and a cervical swab taken from the victim, as well as a pubic hair found on the same sock * * * .”
The People also assert that there is additional newly discovered evidence, specifically “the record of prior, similar attacks committed by Reyes, including an assault and rape committed in Central Park two days before the jogger attack; and scientific test results undermining the probative value of evidence introduced in the defendants’ trials.”
The People also conducted forensic testing of DNA and hair samples to see whether the results corroborated Reyes’ version of his involvement in the crimes involving the female jogger, and report in their affirmation that
“After preliminary DNA results were received from the F.B.I. in May [2002], the District Attorney’s Office retained a private laboratory to conduct additional forensic testing.
“The laboratory performed further tests in connection with those DNA samples which connected Reyes to the crime. The tests provided additional corroboration of Reyes’ account. The private laboratory concurred with testimony given at the defendants’ trials that the DNA on the sock found at the *489 Central Park crime scene and the DNA on the cervical swab taken from the victim came from the same person. Thus, Reyes’ DNA matched both.
“Moreover, the laboratory found additional, untested semen on the sock, which it tested using technology not in existence in 1989. The test established that Reyes was the source of the DNA to a factor of one in 6,000,000,000 people.
“The three hairs found on Kevin Richardson were reexamined following F.B.I. protocols for questioned hair samples. The hairs were first reexamine [d] microscopically and then submitted for mitochondrial DNA testing. All had been mounted on slides for examination in 1989.
“The microscopic analysis of the hairs was performed by Special Agent Douglas Deedrick, formerly Chief of the Hair and Fibers Unit and currently Unit Chief of the Information and Evidence Section of the F.B.I. Agent Deedrick disagreed with the expert opinion offered at the original trials. His conclusion was the hairs were not suitable for comparison, and could not be used to link Richardson to the jogger.”
Also, the People concede that, “All of that evidence meets the criteria set forth in the statute”; “A through and extensive investigation was undertaken at the time of the original proceedings in an effort to develop additional evidence. Nevertheless, the People’s case at both trials rested almost entirely on the statements made by the defendants”; “DNA evidence was extracted from semen deposited on the jogger’s sock, found near her at the crime scene. It did not match any of the defendants, or any other known sample. The same was true of DNA evidence extracted from a cervical swab; it did not match the defendants or any other known sample. Expert testimony at trial, however, established that the DNA from both the victim and the sock appeared to have come from the same source. Testimony also established that the DNA was not a mixture, it was from a single source, meaning that only one individual had ejaculated”; and that “Ultimately, there proved to , be no physical or forensic evidence recovered at the scene or from the person or effects of the victim which connected the defendants to the attack on the jogger, or could establish how many perpetrators participated.”
As to Reyes’ statement, the People conducted an extensive investigation and they reported that “Th[e] investigation has led to the conclusion that Reyes’ account of the attack and rape is corroborated by, consistent with, or explanatory of objective, independent evidence in a number of important respects. Fur *490 ther, investigators have been unable to find any evidence that, as of 1989, Reyes, knew or associated with the defendants or any of the individuals known to have been in the park with them on the night of April 19.”
The People also did a comparison of Reyes’ criminal history to see if it contained any features which might serve as additional corroboration and reported to the court that “Corroboration of Reyes’ account of the crime is found both in the pattern of his other sexual attacks and in some of their specific facts. He consistently targeted and stalked Caucasian women, or women who appeared to be Caucasian. His crimes all involved conversation with his victims, either as a way of making initial contact or as a way of acquiring information that would enable him to steal more property. Frequently, conversation or a search of property alternated with outbursts of physical and sexual violence. All of his rapes or attempted rapes also involved robbery.”
As to their assessment of the evidence presented at trial, the People conclude that the newly discovered evidence fatally weakens thát evidence. Specifically the People state that, “an assessment of the likely impact of newly discovered evidence requires an honest appraisal of the strength or weakness of the case originally presented by the People. The defendants’ statements in this case were sufficiently persuasive to result in the convictions of all five defendants on at least some of the charges against them, and, for that matter, persuasive enough to bring about those convictions before two separate juries. However, the confessions also had serious weaknesses.” For example, the People state that “on the issue of who raped her, Richardson named Antron, Raymond, and Steve. McCray identified a tall, skinny black male, a Puerto Rican with a black hoodie, Clarence, and Kevin, and said that he himself simulated having sex with her. Santana claimed that Kevin raped her, after which Santana left the park. Salaam named Kevin, Kharey, « and a couple of unknown males. And Kharey Wise named Steven, Raymond and Kevin. Kevin Richardson is the only name common with all the statements, with the exception of his own. It was, however, Richardson who first implicated members of the group in the rape, providing a possible motive for others to accuse him.”
Most significantly, the People focus on the effect of the missing evidence in depriving the defendants from presenting an “alternative theory of the case.” They state that “the jurors who originally heard the evidence were presented with no *491 persuasive alternative theory of the case to consider. Certainly, no one would have thought that as the defendants and their group were making their way through Central Park, a serial rapist was also at large. The newly discovered evidence provides incontrovertible proof that he was.” The theory that the newly discovered evidence would support was that “[a] self-confessed and convicted serial rapist — who habitually stalked white women in their 20’s; who attacked them, beat them, and raped them; who always robbed his victims, and frequently stole Walkmans; who tied one of his victims in a fashion much like the Central Park jogger; who lived on 102nd Street; who beat and raped a woman in Central Park two days before the attack on the transverse; whose DNA was the only DNA recovered inside and alongside the victim; whose narrative of events is corroborated in a number of significant ways; who had no connection to the defendants or their cohorts; and who committed all his sex crimes alone — has come forward to say that he alone stalked, attacked, beat, raped and robbed a white woman in her 20’s, who was set upon on the 102nd Street transverse, was missing her Walkman, and was left tied in a way that has never before been explained.”
“Additionally, CPL 440.30 (1) and (6) require that [the instant] motion [ ] be based upon sworn allegations and that the defendant prove ‘every fact essential to support the motion’ by a preponderance of the evidence.” (People v Gurley, 197 AD2d 534, 535 [2d Dept 1993].) “It has been held that [t]he power to grant an order for a new trial, based upon newly-discovered evidence, is purely statutory and such power may be exercised by the court only when the requirements of the statute have been satisfied, the determination of which rests in the sound discretion of the court.” (People v Balan, 107 AD2d 811 [2d Dept 1985] [citations and internal quotation marks omitted].)
With this further guidance and given the facts, as presented by the parties, this court must apply the remaining Salemi factors to determine whether the new evidence is of such a character that it would create a probability that it would have resulted in a more favorable verdict. (People v Maynard, 80 Misc 2d at 284.)
First, with respect to whether the newly discovered evidence is merely impeaching of or contradictory to the former evidence, this court finds that although the defendants made incriminating statements linking them to the crime scene, as established in the parties’ papers, none of the defendants admit *492 ted raping the jogger. Thus, Reyes’ confession cannot be viewed as contradictory. Additionally, Reyes’ confession cannot be considered cumulative either since the accounts given by the defendants differ on significant details, such as who initiated the attack, who knocked the victim down, who held her, who raped her, what weapons were used during the attack, and when, in the sequence of the events, the attack took place.
For example, as detailed in the People’s affirmation, on the issue of who knocked the jogger to the ground, Richardson said McCray, Santana and Steve did it. McCray said “everyone charged her.” Santana said Kevin did it. Salaam said he did it and Wise named Santana and then said “Steve” did it. Similarly, on the issue of who raped the jogger, Richardson named McCray, Santana and “Steve.” McCray said it was a tall skinny black man, a Puerto Rican with a black hoodie, Clarence and Kevin. And he said that he himself had simulated having sex with the jogger. Santana said Richardson raped her. Salaam named Richardson, Wise and a couple of unknown males. Wise named “Steven,” Santana and Richardson.
Additionally, it is reported that Wise stated that the jogger’s clothes had been cut off and that her legs had been cut with a knife. However, the record reveals that the jogger’s clothes were not cut off and that there were no knife wounds on the jogger. Richardson said that her bra was ripped off, when in fact it was still on her when she was found. Santana described the jogger as naked when they left, although she was found with her jogging bra still on and her t-shirt tied around her head. None of the defendants accurately described where the attack on the jogger took place.
On the other hand, the People conclude that Reyes was accurate about specific details of the crimes against the jogger. He described the crime scene in detail and what the victim was wearing. He indicated that he used a heavy branch to attack her, which was consistent and explanatory of medical and crime scene evidence. Further, his account was corroborated by the fact that he had engaged in similar sexual attacks involving the targeting and stalking of Caucasian women or women who appeared to be Caucasian.
Consequently, Reyes’ confession does not impeach nor contradict the evidence presented at trial.
The newly discovered evidence in this case not only consists of statements made by Reyes but by Reyes’ DNA, which matched the DNA found on a sock at the Central Park crime scene and the DNA on the cervical swab taken from the victim. *493 Pursuant to CPL 440.10 (1) (g) and People v Salemi (309 NY at 216), this evidence is certainly newly discovered in the traditional sense since it was not available at trial and could not have been discovered with due diligence. Moreover, it cannot be said that this evidence would be merely contradictory of the evidence already in the case since there was no DNA forensic evidence presented against the defendants at trial. Newly discovered evidence consisting of DNA analysis of semen and other secretions found on victim’s clothing would not be merely cumulative to analysis offered at trial, in view of the significant potential which scientific evidence has to influence a jury. (See generally, People v Callace, 151 Misc 2d 464, 466 [Suffolk County Ct 1991].)
Preliminary DNA results received from the FBI were confirmed by a private laboratory retained by the People to conduct additional forensic testing. That laboratory established that Reyes was the source of the DNA to a factor of one in 6,000,000,000 people. In addition, mitochondrial DNA testing established that Reyes was also the source of the pubic hair found on the sock in Central Park and confirmed that no one else’s DNA was present in the samples taken from the victim or at the crime scene.
Given the facts as conceded by the People and found by the court, it is virtually self-evident that the newly discovered evidence, specifically, the confession of a self-admitted murderer and serial rapist, corroborated by physical evidence including scientific testing establishing that he was the sole source of DNA evidence connected to the Central Park jogger’s rape to a factor of one to 6,000,000,000, would create the probability that had such evidence been received at trial, the verdict would have been more favorable to the defendants.
However, that conclusion is not as readily apparent with respect to the convictions for robbery in the first degree. The victim of the robbery was John Loughlin. At first glance it would appear that this robbery is totally unrelated to the newly discovered evidence. Consequently, the sole issue remaining is whether a newly discovered confession and DNA evidence, related solely to the rape of the Central Park jogger, is material to the robbery of John Loughlin.
Since all the other Salemi factors have been established, the court will now focus on the materiality of the new evidence to the robbery convictions.
Initially, it is noted that except for the argument presented in Yusef Salaam’s motion that “the horrible nature of the *494 assault/rape crime overwhelmed any possibility that he (and the other defendants) could receive a fair trial as to any and all of the charges,” the defendants are silent as to a legal or factual basis that establishes materiality with respect to the newly discovered evidence and the robbery. Given the limited access that the defense attorneys had to the newly discovered evidence, this limited argument is understandable. However, this argument sets forth a compelling reason, in the interest of justice, as recognized by the People, for further examination of the effects of the newly discovered evidence on the robbery convictions. “It is well recognized that the prosecution has a great advantage over the defendant in the fact-gathering process due to his superior manpower and access to other law enforcement facilities.” (People v Maynard, 80 Misc 2d at 287 [citation omitted].)
The District Attorney has utilized his advantage on the People’s and the defendants’ behalf. The People’s affirmation is a reminder that, “the prosecutor is both an administrator of justice, and an advocate * * * ” and that, “the duty of the prosecutor is to seek justice, not merely to convict.” (See ABA Standards for Criminal Justice, Prosecution Function, standard 3-1.2.) Consequently, the People have presented a persuasive and compelling argument for the granting of the motion as to all convictions. The People demonstrate that based on their investigation and the defendants’ statements, they relied on a gang rampage/rape “single incident” theory to prosecute the defendants. Specifically, the People conclude that, “Under the extraordinary circumstances presented by this case, the People are constrained to consent to the defendants’ motions with respect to the other charges of which they were convicted.”
Further they concede that “The People’s theory was that [the Central Park jogger] was set upon by a number of young men, gang-raped by two or more of them, kicked and pummeled by the group, and beaten about the head with a pipe, a brick, and a rock.”
They specify that “It is commonplace for defendants to be charged in a single indictment with crimes of very different levels of gravity. The law permits it and correctly presumes that juries can and will follow instructions requiring that they weigh evidence of guilt as to different counts separately. Thus, in and of itself, the relative seriousness of the jogger attack plainly would not merit setting aside the juries’ verdicts as to other charges.”
*495 But they also point out that “In this case, however, other factors must also be weighed. The crimes the defendants were charged with were not widely separated by time or location, either from each other or from the attack on the jogger, all occurred within a single hour, at the northern end of Central Park. In effect, all were considered to be part of a single incident — a rampage in the park, as is reflected in the fact that the defendants were charged with Riot in the First Degree.”
The People also demonstrate their commitment to a gang rampage/rape “single incident” theory in their closing argument to the juries and state that “the jurors in the trial of Kharey Wise and Kevin Richardson * * * should not lose sight of the ‘overall pattern of the behavior * * * [as] this group continued through the park for a period of approximately an hour attacking one after another after another person,’ ” and that “this showed that the group acted with a joint purpose, that they were ‘an entire group acting together in one violent outburst of destruction, or beating, or assaulting,’ ” and that “Similar references were made in summation in the earlier trial of McCray, Salaam and Santana.”
Another basis for their conclusion as to the materiality of the new evidence to the robbery charge is their assessment that “It was logical for the People to suggest that the defendants’ culpability and criminal intent could be inferred from the pattern of conduct engaged in by the group of which they were a part. This would have been an inescapable inference for the jurors in any event. But the new evidence detailed above would, if credited, call into question the defendants’ involvement in the most horrific crime in the pattern of incidents in the park— and indeed, the involvement of the larger group as well. Accordingly, it would likely have had a significant bearing, in the jurors’ minds, on the defendants’ culpability for those other crimes as well” and that “the People’s proof was limited by one fundamental fact: none of the victims could identify any of the defendants.”
Moreover, the People state that “the admissions concerning the other crimes were contained in the same written and recorded statements as the admissions concerning the rape, and were largely obtained as part of the same process of questioning. As a consequence, the newly discovered evidence would probably raise questions about the reliability of those admissions similar to the questions raised about the defendants’ confession to rape. There is some testimony that, in *496 certain instances, admissions about other criminal incidents were made substantially before and apart from any statements about the rape. But that testimony alone, absent independent corroboration, would not have been sufficient to allay concerns about the defendants’ confessions raised by the newly discovered evidence.”
And the People finally concede that “In sum, there was no significant evidence at trial establishing the defendants’ involvement in the other crimes of which they stand convicted that would not have been substantially and fatally weakened by the newly discovered evidence in this matter,” and that “Assessing the newly discovered evidence is required solely in light of the proof introduced at the earlier trials, we conclude that there is a probability that the new evidence, had it been available to the juries, would have resulted in verdicts more favorable to the defendants, not only on the charges arising from the attack on the female jogger, but on the other charges as well.”
Given the imperfection of the evidence before the jury, it is clear that the defendants’ statements played a crucial role in the jury’s verdict as to all convictions. These confessions were the quintessential evidence in the prosecution of the defendants. They laid the foundation for a course of action developed, followed, and relied on for the prosecution and conviction of the defendants. That course was based on a theory that the defendants were involved as a group in a single incident: a crime rampage, which included rape, robbery and other crimes. That theory also incorporated a logical “guilt by association” to the crimes against the Central Park jogger inference. Although this theory cannot be said to have been unreasonable in 1990, given the evidence at the time of the trials, this court finds that the newly discovered evidence, as conceded by the People, is so intertwined with all the crimes charged against the defendants and that it would so weaken the reliability of the confessions, that the newly discovered evidence would create a probability that had such evidence been received at trial, the verdict would have been more favorable to the defendants as to all the convictions.
Based on the foregoing, this court concludes that if the statement and the forensic evidence, related to Matías Reyes, were available at the time of trial, there exists a reasonable probability that the verdicts in the defendants’ trials would have *497 been more favorable to defendants. Accordingly, defendants’ motion to vacate judgment and order a new trial, based on newly discovered evidence, must be granted as to all of the remaining convictions.

 Although attempts have been made by well meaning individuals to influence the court’s decision in this matter, pursuant to section 100.3 (B) (6) of the Rules of the Chief Administrator of the Courts (22 NYCRR), judges are generally prohibited from considering any “communications made to the judge outside the presence of the parties or their lawyers concerning a pending or impending proceeding.” Consequently, these communications played no part in this court’s determination.