GERARD E. LYNCH, Circuit Judge,
concurring:
I fully join in Judge Wesley’s thorough opinion for the Court. I write separately to explain in simple terms why the Court’s decision is consistent not only with governing law, but also with the basic assumptions of our jurisprudence.
The question before the Court is whether the rule of Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which prohibits a criminal defendant from obtaining damages for *139 wrongful prosecution, conviction or imprisonment until and unless the conviction he complains of has been overturned, prevents the plaintiff Marcos Poventud from suing the defendants for, as he alleges, obtaining a conviction against him that led to his incarceration for almost nine years by deliberately suppressing evidence that cast doubt on the critical identification testimony of the victim.[1] The short answer is that it does not, because the criminal judgment against him was later vacated by the state court that entered it, because the court found that the police had indeed rendered his trial unfair by suppressing exculpatory evidence. The defendants argue, however, that we should nevertheless forbid Poventud from seeking damages for that wrongful conviction and sentence, because Poventud later, after the full facts were known to both sides, pled guilty to a related but lesser offense, and was sentenced to one year of imprisonment.
I
The fundamental complicating fact about this case is that Marcos Poventud has been the subject of two efforts to adjudicate the charges against him, with conflicting results. First, he was tried and convicted of extremely serious crimes, including attempted murder, stemming from the robbery of a cabdriver named Younis Duopo, and sentenced to ten to twenty years of imprisonment.[2] It is that conviction that Poventud contends, and that the state court found, was profoundly unfair.
The principal evidence against Poventud was the testimony of the victim. It does no disrespect to Mr. Duopo to note that a single-witness identification of this sort is hardly unassailable proof of Poventud’s guilt. Well-known scientific evidence gives us sound reasons to believe that eyewitnesses generally, and violent-crime victims specifically, are not always reliable observers or reporters. The trauma of a highly frightening and stressful event and subsequent life experiences, including the confounding effects of potentially suggestive police investigatory procedures, often distort the victim’s recollection.[3] But it would disrespect Mr. Duopo to use our knowledge regarding the fallibility of human memory to disqualify his testimony and require the dismissal of all charges against a person that he, the crime victim, has positively identified as his assailant. Thus, although we cannot be certain that Mr. Duopo’s identification was correct, the law permits him to testify and the defense to cross-examine him, and allows jurors, acting as the conscience of the community, to decide whether the information before *140 them is sufficient to persuade them beyond a reasonable doubt of the defendant’s guilt. It is the role of the jury, fairly apprised of the facts then known, to weigh the strengths and weaknesses of the evidence before them, bearing in mind the inherent limitations on the victim’s ability to observe, remember, and report what he saw. The jury at Poventud’s first trial, after hearing the victim’s account and Poventud’s alibi defense, was persuaded beyond a reasonable doubt of his guilt.
The justice of relying on the jury’s conclusion, however, depends critically on the assumption that the jury knew all of the relevant facts about the reliability of Mr. Duopo’s identification. It turned out, however, that the jury had been deceived — not by Mr. Duopo, but by the authorities who covered up important evidence about how he came to identify Poventud.
When a codefendant also convicted of the robbery secured a new trial due to a legal error, evidence fortuitously came to light that Poventud’s initial trial had not been fair. The rules had not been followed, and the result was not reliable. The breach was no mere technicality; it went directly to the truth-seeking function of the trial. The entire point of the first trial was to determine the reliability of Mr. Duopo’s testimony, by fairly putting before the jury the facts that would reasonably bear on whether his identification was accurate. The state court would eventually determine, however, that the police officers investigating the ease had deliberately hidden the fact that Mr. Duopo had earlier identified someone else. Perhaps a jury that knew that fact would still have found Mr. Duopo’s identification sufficiently accurate to return a guilty verdict, or perhaps taken together with the fact, which they did know, that it was not until the fourth time that the police had shown him Poventud’s picture that Mr. Duopo finally identified Poventud, the additional information would have created a reasonable doubt. Surely, however, any reasonable juror would find this evidence highly relevant, and significantly damaging to the identification’s reliability. For that reason, the Supreme Court has made crystal clear that such evidence must be disclosed to the defense. See Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Without question, covering up facts so damaging to the case against a defendant violates the defendant’s legal rights. This is not just a matter of the rules of the road. By failing to disclose evidence that would cast significant doubt on the principal evidence of Poventud’s guilt, the police did something tantamount to fabricating false evidence of guilt: they deceived the jury into thinking that the evidence of guilt was stronger than it was. When this misconduct came to light, the state court did what the law, justice, and common decency required, and vacated Poventud’s conviction. At that point, the presumption of innocence was restored. Poventud was no longer legally guilty of the four offenses of conviction, and could no longer be punished. By that time, however, Poventud had already served nearly nine years in prison as punishment for crimes of which he was then again presumed innocent.
The stage was now set for a second trial of the original charges. Though now presumed innocent, Poventud still faced the accusation that he was Mr. Duopo’s assailant, and he could be tried again — fairly this time, with all the facts known to the jury. And perhaps, though it might seem unlikely, a new jury, exposed to all the facts, might still have convicted him. At that point, however, another aspect of our system came into play, the institution of plea bargaining. Neither the prosecution nor the defense can predict the future, and *141 both were uncertain as to the likely outcome of a fair trial. The prosecutors, no doubt in good faith, believed that they had the right man, and that a trial should result in another conviction. But the chances of acquittal were obviously high. Even assuming that Mr. Duopo were alive and well and available to testify, and would again identify Poventud as his assailant, nearly a decade had passed since the crime; his memory would be less clear, and his ability to persuasively identify anyone would be considerably less certain. Moreover, the jury assessing his testimony would now know, as the first jury had been prevented from knowing, that Mr. Duopo had first identified someone who everyone agreed was not involved in the crime. With the prosecution’s case significantly weakened, Poventud’s alibi might look much more persuasive to the jury.
Poventud, however, could be no more confident than the prosecutors of the outcome of a new trial. Even assuming that he knew himself to be innocent, he also knew that he had been convicted once before, and he had already spent almost nine years in prison. Indeed, he remained a prisoner, because he lacked funds to pay his bail. Moreover, the prosecutors could appeal the vacatur of his conviction, and they successfully resisted his attempt to have his bail reduced so that he could remain at liberty while facing a second trial.
In these circumstances, the prosecutors offered Poventud an alternative to trial: if he pled guilty to a lesser offense, they would agree to a sentence of one year in prison — time he had long since served. In effect, if he accepted the plea bargain, he would be released from prison. Poventud thus faced a stark choice: he could continue to fight, risking the possibility that his sentence of up to twenty years in prison would be restored against the hope of a complete acquittal. Or, he could accept the offer, plead guilty, and go free immediately. Poventud accepted the offer: he pled guilty to attempted robbery in the third degree, was sentenced to a fraction of the time he had already spent in prison, and walked out of the courthouse a free man.[4]
To recapitulate the results of the two trials of Marcos Poventud: at the first proceeding, corrupted by police misconduct, a jury that was ignorant of the truth about the identification witness, convicted him of attempted murder and three other crimes leading to nine years of imprisonment on a ten-to-twenty year sentence; at the second, he was convicted on his plea of guilty to third-degree attempted robbery and was sentenced to one year.
Now Poventud seeks damages from those who, in effect, fabricated evidence of his guilt by suppressing evidence that would have shaken, perhaps fatally, the identification testimony used to convict him. The defendants seek to have his suit dismissed, based on the same rule that would have prevented him from suing while his initial conviction stood unchallenged, arguing that a fairly obtained conviction by guilty plea (albeit to a lesser offense with sharply limited consequences) prevents a suit seeking damages for the wrongful conduct that resulted in his earli *142 er, more serious, now-vacated conviction, with its resulting drastically more serious punishments.
It seems to me, as it does to a majority of the judges of this Court, that the legal answer is simple. As Judge Wesley’s opinion demonstrates, the Supreme Court’s holding that a legally valid conviction prevents a suit “to recover damages for allegedly unconstitutional conviction or imprisonment” explicitly applies only until that “conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus.” Heck, 512 U.S. at 486-87, 114 S.Ct. 2864 (emphasis added). Poventud seeks to recover damages for his initial conviction and for that portion of his lengthy imprisonment that was attributable to that conviction. That conviction exists no longer; a state court declared it invalid, and we must accept the outcome of the legal process that holds him not guilty of those offenses. Heck thus does not bar his suit.
It seems to me that the answer is equally simple from the standpoint of simple justice. The state court decided that Poventud was not fairly tried, and that the police deliberately suppressed evidence helpful to the defense in order to make the case against him appear stronger than it was. His conviction of four crimes including attempted murder, and sentence to 10 to 20 years in prison is a legal and moral nullity, the result of a trial deliberately corrupted by the police. Whether or not prosecutors might have successfully appealed that judgment, or obtained the same conviction again after a second, fair trial, they chose not to take those risks; whether or not Poventud would have been acquitted at a second trial, he too elected not to take his chances. Our best — however imperfect — approximation of the result that would have come from a fair trial is the result of the plea bargain: conviction on a single, much less serious count, and a sentence to only a year in prison.
We must accept as binding the outcome of these criminal proceedings: that Poventud, at an unfair trial, suffered a much more serious conviction and punishment than he received from a fair proceeding, with all the facts known. By the same token, however, Poventud must accept the other outcome of the legal process: his conviction, by plea of guilty, of the offense of attempted robbery in the third degree, and his sentence to one year of imprisonment. Irrespective of the difficulty of his choice to plead guilty, Poventud is legally guilty of that offense. He therefore may not argue that he was wrongly prosecuted or charged; he cannot claim that he was unfairly convicted of a crime, or that he was wrongly required to serve a year in prison. But he certainly may argue that his initial, more serious conviction was wrong, and wrongful, and that as a result of deliberately unfair and corrupted processes he was forced to serve many additional years in prison.[5]
II
There is thus a certain common sense, rough justice to the idea that Poventud can seek damages for the difference between the outcomes of his first and second processes, the first conducted outside the *143 rules and the second within them. It is reasonable to ask, however, where is the truth in all of this. I think any fair-minded person will agree that the trial that led to Poventud’s initial conviction was deeply — and intentionally — corrupted, and that its result is unreliable. But Poventud has now admitted, under oath (albeit under deeply questionable circumstances) that he was indeed involved in the robbery. Are we to award damages, in effect, for the fact that Poventud lost the opportunity to be acquitted of a crime that he may very well have committed because the rules were not followed?
I believe that we must. As a matter of law, in order to prevent the horror of convicting an innocent person, we insist that someone charged with a crime may only be convicted and punished if the state can prove his or her guilt by a very demanding standard of proof, beyond a reasonable doubt. If a defendant cannot be thus proven guilty — if the evidence, however suggestive of guilt it may be, does not rise to a sufficient level of strength, that defendant must be declared not legally guilty of the crime charged. And certainly, if a defendant is found legally guilty by a jury that has been deprived of the full story by government misconduct, that conviction is void.
But do we not now know that Poventud is guilty, as a matter of fact, because of his plea? I submit that we know no such thing. Poventud is legally guilty of the crimes he was convicted of by a putatively fair process. That guilt is as much a matter of legal convention as is his legal innocence of the more serious charges of which he has never been fairly convicted.
No one who was not there will ever know for certain whether Marcos Poventud participated in the robbery of Younis Duopo on March 6, 1997. Our ignorance on that score is not a function of any weaknesses of our criminal justice system; rather, it is a function of the limited scope of human knowledge. Our legal system searches for the truth, but humankind lacks the capacity to obtain absolute knowledge of the truth about past events. Cognizant of our limitations, we nevertheless must act on the basis of the best information we can glean. To that end, we have devised a system of trials and proof, by which we attempt to develop objective evidence in order to make the best judgments we can about the facts. As much as we strive to improve that system, so long as we remain human, our legal system will remain imperfect. Mistakes are inevitable. The best we can do is to follow our procedures, as imperfect as we know they are, and accept and act upon the results that they produce.
At the conclusion of Poventud’s first trial, on the then-valid assumption that the jury had been able to make a full and fair judgment of the strength of the evidence against him, society was justified in punishing Poventud. Some might well argue that we could and should devise better procedures for testing identification evidence, but we must act under the rules we have been able to agree on at present, and under those rules, the evidence was strong enough for a legal finding of guilt.
It does not follow from the jury’s verdict that, in the eye of an omniscient God, Poventud was actually guilty. We know, to our sorrow, that there remained some risk that Mr. Duopo was mistaken and that he identified the wrong man. If the trial was fair, however, it was the duty of the court to impose punishment. If at some later date, overpowering proof of his innocence were to emerge, we would vacate his conviction, and a decent society would seek to compensate him, in some necessarily inadequate way, for the tragic error. But if the trial was fair, and the witnesses *144 honest, no one would have done Poventud a legal wrong. If everyone involved — the victim, the police, the prosecutor, the judge and jury — acted honorably and justly, any resulting mistake would be attributable simply to human imperfection. At the end of his first trial, then, Poventud was legally guilty of four offenses and was justly punished, whether or not in actual fact he had committed those crimes. So long as the result of his trial stood unimpaired, Poventud’s four-count conviction and sentence of 10 to 20 years’ imprisonment was legally correct, and, as a matter of law, Poventud was barred from suing anyone he believed did him wrong by acting dishonorably within the process that led to his conviction.
Those legal consequences could not stand, however, once it became clear that the trial was not fair, that the rules had not been followed, that some of the authorities whose job was to collect and present the evidence fairly had not behaved honorably, that even within the assumptions of our already fallible system the result was not reliable. Just as the jury’s verdict, premised on what we erroneously thought was a fair trial, made it legally true that Poventud was guilty, whether or not he had actually committed the crimes, vacatur of the unfairly obtained conviction restored Poventud’s legal presumption of innocence, but did not mean that Poventud did not commit the crime. The newly discovered evidence of police misconduct does not prove Poventud’s innocence; it only makes it somewhat less likely that he is guilty. Perhaps the police manipulation of the evidence led to an innocent man’s conviction, but perhaps it unfairly strengthened the case against the real robber.
In principle, the stage was then set for a second, fairer trial, with all of the evidence available now to be presented to a new, unbiased jury. But the ability of such a second trial to find the “real” truth had surely been compromised. The police misconduct had not only prevented a fair trial in the first place, but given the lapse of time before that misconduct was discovered, it was no longer possible to replicate those original conditions. Almost nine years later, Mr. Duopo’s identification testimony would be undermined not only by the newly discovered impeaching evidence, but by the sheer passage of time. To that extent (through no fault of his own, of course), Poventud’s chances of acquittal were unfairly improved. That is why the prosecutors were moved to offer their compromise proposal, by which Poventud could obtain immediate freedom in exchange for an admission of guilt to a lesser crime.
Critics of American criminal justice may decry the very existence of plea bargaining. But we permit such arrangements, in large part on the theory that, if both sides are reasonably aware of the risks and likely outcomes of a trial, and of the strength of the case against the defendant, a compromise outcome may well be both procedurally fair and substantively just. But whatever the general merits and demerits of such a system, it too was corrupted by the initial wrong that undermined Poventud’s first trial. Just as the prosecutor’s case was weakened by the passage of time, so was Poventud’s ability to make a fair choice between alternatives. The choice of freedom in exchange for an admission would be easy for a guilty man, but even an innocent one would be hard pressed to decline the prosecution’s offer. A hero might resist the bargain and insist that he would not accept the ignominy of falsely admitting guilt. One is reminded of John Proctor, falsely accused of witchcraft in Arthur Miller’s play The Crucible, who goes to the gallows rather than accept an offer that would let him go free in ex *145 change for a false confession. It is difficult to expect such heroism of mere mortals. Proctor, though based on a historical figure, is after all a fictional character, and even he first signed the false confession before having a change of heart. Poventud did what I suspect most ordinary human beings would do in his situation, even if they were innocent.
Within the rules of our system, however, having pled guilty to a crime connected to the robbery, Poventud is legally guilty of that crime. We, and he, must accept the outcome of the new, putatively fair, proceeding. Assuming, as we must, that Poventud’s guilty plea was legally taken, Poventud is now legally guilty of attempted robbery in the third degree, and was fairly punished by one year of imprisonment. But we still do not know with certainty, any better than we knew before his first trial, whether Poventud actually robbed Mr. Duopo. A confession in open court is ordinarily powerful evidence of guilt, but we know that false confessions have been obtained by pressures much less imposing than those to which Poventud was subjected.[6]
The legal process, as the dissenters correctly note, is a search for truth. The rule that the police violated here is one that is designed to make it more likely that the truth will be found. But the truth is elusive, and can never be known with certainty. Our legal procedures, even at their best, can only produce a provisional truth, a legally accepted truth, an approximation of the truth that is good enough to act upon, though known to be imperfect. I understand, and agree with the dissenters, that a defendant cannot disavow legal guilt for an offense to which he has lawfully pled guilty, no matter how much he might claim, and whether or not an impartial observer might believe, that his choice to plead guilty was made under circumstances under which an innocent person might well enter such a plea. Poventud, as I have noted and as the Court concludes, must accept the consequences of that plea.
But the dissenters appear to insist that his guilty plea represents not just a legal truth, but an existential one. According to the dissenters, Poventud’s plea requires us to treat him not only as if he were guilty of the lesser offense of which he is legally guilty, and justly subjected to the relatively short sentence that he accepted, but also as if he had been fairly convicted of the far more serious crimes, and fairly subjected to the drastically more stringent sentence, that resulted when the authorities cheated and suppressed evidence that might have led to his acquittal.[7] That version of “the truth,” however, has no basis in law: Poventud never pled guilty to those more serious offenses, and he was found guilty of them only after a deliberately and tortiously flawed process. Poventud seeks to *146 sue the defendants because they distorted the search for the truth and obtained a conviction that cannot fairly stand. As the dissenters correctly note, the very purpose of the rules that the defendants violated is to “ensure that [such] miscarriage[s] of justice do[] not occur.” See Dissenting Op. of Judge Jacobs, post, at 156.
To hold that the legal system must stand by the results it fairly generates according to its rules is not to espouse a “sporting theory of justice.” Id. at 151. We seek accurate results, reached by fair procedures. We do the best we can, and we live with the results. The result of the legal process here is that Poventud is legally guilty only of a lesser offense and worthy of a lesser punishment, and that he suffered drastically more serious consequences as a result of deliberate wrongdoing. It is no more a “sporting theory” to insist that society stand by the part of the resulting criminal judgment that found Poventud not liable for that portion of his punishment that was unfairly obtained than it is to deny him any right to argue that he is innocent of the crime to which he pled guilty when presented with an offer that perhaps only a hero could refuse. It seems to me deeply inconsistent for the dissenters to insist (rightly in my and the Court’s view) that Poventud is bound by the legal fact of his guilty plea, despite the very real possibility that he might have been factually innocent notwithstanding the plea, but then to refuse to accept the legal fact that Poventud was unfairly subjected to greater punishment because of the equally real possibility that he might have been factually guilty notwithstanding the prosecution’s inability to convict him of the greater crimes for which he suffered that punishment.
To stand by the results that our system produces is simply to accept the limitations of our knowledge, and the inevitable separation between a truth that we cannot fully know, and the judgments reached by inevitably flawed human processes. The dissenters would accept Poventud’s plea not merely as legal truth, but as an absolute truth that frees the defendants from accountability for having distorted the truth-seeking process to his detriment. The Court correctly treats all aspects of the outcome as specific legal judgments with very particular legal consequences, but nothing more. Poventud now seeks to argue to a jury that he should be awarded damages for the difference between the consequences that resulted from a legally conducted process and those he was forced to suffer as a result of an unfair, distorted one, from the persons he claims are responsible for the obstruction of the truth-seeking process. The Court correctly permits him the opportunity to make that argument.

.Because this is an appeal from a grant of summary judgment dismissing Poventud's civil complaint, the evidence must be construed in the light most favorable to him drawing all reasonable inferences, and resolving all ambiguities in his favor. Colavito v. NY. Organ Donor Network, 438 F.3d 214, 217 (2d Cir.2006). In this case, that is not simply a legal requirement; the findings of the state court on Poventud’s post-conviction motion to vacate his conviction provide a strong reason to believe that these allegations are in fact true. When all of the evidence is heard at a civil trial, of course, a jury may or may not agree with Poventud's view of the evidence.

. Poventud was convicted on four counts: attempted murder in the second degree, attempted robbery in the first degree, assault in the first degree, and criminal possession of a weapon.

. See Young v. Conway, 698 F.3d 69, 88-89 (2d Cir.2012) (collecting studies regarding the unreliability of eyewitness testimony), cert. denied, - U.S. -, 134 S.Ct. 20, 187 L.Ed.2d 409 (2013); see generally State v. Henderson, 208 N.J. 208 (2011) (reviewing various social science research, laboratory experiments, and scientific evidence demonstrating that "an array of variables can affect and dilute memory and lead to misidentifications").

. Poventud’s guilty plea is legally valid. A defendant who is fully aware of the consequences of pleading guilty may enter a binding plea of guilty, notwithstanding powerful inducements to do so. At one point, Poventud sought to argue that his guilty plea was not lawfully taken, by moving to withdraw his guilty plea as the product of unfair deception by prosecutors — he claimed that the authorities had falsely told him that they would appeal the vacatur of his conviction, even though they had already decided not to. He later withdrew that motion, so we must treat the plea as legally binding.

. On these points, I believe that Judge Chin’s position is entirely consistent with that of the Court. The difference between the majority's position and Judge Chin’s is not about what Poventud may or may not argue in his civil lawsuit, but only about whether his complaint has sought to make arguments that go beyond what the Court permits, and accordingly whether some portion of that complaint must be dismissed.

. See, e.g., People v. Wise, 194 Misc.2d 481, 752 N.Y.S.2d 837, 850 (N.Y.Sup.Ct.N.Y.County 2002) (vacating convictions of Central Park Five); see generally Steven A Drizin & Richard A. Leo, The Problem of False Confessions in the Post-PNA World, 82 N.C. L.Rev. 891 (2004) (analyzing 125 cases in which "indisputably innocent individuals confessed to crimes they did not commit”).

. Judges Jacobs and Livingston both would exalt Poventud’s plea allocution by characterizing it as a "solemn admission.” Dissenting Op. of Judge Jacobs, post, at 152-53; see also Dissenting Op. of Judge Livingston, post, at 167-68. But Poventud's plea is no more “solemn,” and no less self-serving than his sworn testimony at trial, which Judge Livingston characterizes as perjurious. Id. at 165-66. In each case, Poventud was under oath; in each case, he said what was in his interest to say at the time. With respect, it seems to me that it is the dissenters who are “pick[ing] and choosfing],” id. at 170, which of Poventud’s statements they prefer to believe.